United States District Court
Southern District of Texas
ENTERED
December 06, 2017
David J. Bradley, Clerk

FILED
DEC 05 2017
 , Clerk
Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| DEVADIP CARLOS ESPERICUETA <br> Plaintiff <br> <br> v. <br> <br> <br> AIDA PALACIOS, et al. <br> Defendants | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | <br> <br> <br> CIVIL ACTION NO. 15-320 |

## REPORT & RECOMMENDATION

Pending before the Court is Plaintiff's complaint pursuant to 42 U.S.C. § 1983, which he filed on or around July 20, 2015. (Dkt. Entry No. 1.) Plaintiff paid the filing fee. He is proceeding pro se. No process has issued in this case, and no answer has been filed. The undersigned has completed initial screening of Plaintiff's complaint and concludes this case is ripe for disposition on the record under 28 U.S.C. § 1915A.

For the reasons set forth below, the undersigned respectfully recommends that Plaintiff's civil rights claims be summarily **DISMISSED WITH PREJUDICE** to their being asserted again until such time as the *Heck v. Humphrey*, 512 U.S. 477 (1994) conditions are met.

1

## I. JURISDICTION

The Court has jurisdiction over the subject matter in this case. *See* 42 U.S.C. § 1983; 28 U.S.C. § 1331.

## II. BACKGROUND [1]

Plaintiff is a federal prisoner. On February 21, 2009, Drug Enforcement Administration ("DEA") agents observed a tractor trailer depart Rio Grande City, Texas, and travel to a truck stop in Pharr, Texas. DEA agents maintained surveillance on the tractor trailer which remained parked overnight. The next morning DEA agents observed Plaintiff arrive in another vehicle, enter the tractor trailer, and depart the truck stop. A San Juan Police Department police officer later saw the tractor trailer commit a traffic violation and conducted a traffic stop. Plaintiff gave verbal consent to a search. A narcotics detection canine alerted to the presence of narcotics emanating from the trailer. After transporting the vehicle to another location, the police found eleven bundles, containing 166 bricks, of cocaine wrapped in cellophane and packaging tape, weighing 190.5 kilograms (gross weight). The Hidalgo County District Attorney's Felony Intake section in Edinburg, Texas,

---

[1] This background information is excerpted directly from the undersigned's Report & Recommendation filed in Plaintiff's case pursuant to 28 U.S.C. § 2255 in cause number M-13-205. This Court adopted that Report & Recommendation and denied and dismissed Plaintiff's § 2255 claims. On October 6, 2017, the Fifth Circuit denied's Plaintiff's request for a Certificate of Appealability in the § 2255 case. (M-13-205, Dkt. Entry No. 40.)

arrested Plaintiff for possession of a controlled substance. Plaintiff provided a post-arrest statement admitting that he had been recruited to transport what he knew was cocaine, but only did so out of duress.

On May 31, 2011, a two-count Indictment was filed in the Southern District of Texas, McAllen Division, charging Plaintiff and others with: (1) conspiracy to possess with intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846, 841(a)(1) and 841(b)(1)(A); and (2) possession with intent to distribute 5 kilograms or more of cocaine, that is, approximately 190 kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A) and 18 U.S.C. § 2. On June 13, 2011, Plaintiff self-surrendered to DEA agents in McAllen, Texas. Plaintiff provided a statement reiterating his prior admissions. DEA laboratory testing revealed that the seized cocaine had a net weight of 165.3 kilograms with a purity level of 74.2 percent.

On August 30, 2011, Plaintiff pleaded guilty pursuant to a written plea agreement to the charge of conspiracy to possess with intent to distribute 5 kilograms or more of cocaine. (Cr. Docket Entry No. 104). After accepting Plaintiff's guilty plea, this Court ordered the Probation Office to prepare a Presentence Investigation Report ("PSR"). The PSR calculated Plaintiff's base offense level at thirty-four, but recommended a two-point reduction for Plaintiff's minor role in the offense. The

PSR calculated Plaintiff's criminal history points as three based on prior convictions qualifying under 4A1.1(c):

1. An August 29, 1999, conviction for theft of property in Justice of the Peace Court, Pct. 2, Pl. 1, Pharr, Texas (Case No. CR-4034-99-JP-2/1). A $91.25 fine was imposed.

2. A February 15, 2002, conviction for assault in the San Patricio County Court at Law (Case No.55850) for which Plaintiff received a sentence suspended for 24 months' probation.

3. A March 25, 2002, conviction for evading arrest or detention in the 36th District Court of San Patricio, Sinton, Texas for which Plaintiff received a sentence of one year, suspended for three years' probation.

The three criminal history points established a criminal history category of II under the Sentencing Table at U.S.S.G. Chapter 5, Part A. The PSR observed a statutory mandatory minimum term of imprisonment of 10 years, and the maximum term of life, pursuant to 21 U.S.C. § 846, 841(a)(1) and 841(b)(1)(A). At the time of the PSR, Plaintiff had not yet provided a statement regarding the acceptance of responsibility. The PSR, however, calculated that, if he accepted responsibility, he would be eligible for a two-level decrease, resulting in a total offense level of 29 and a guideline imprisonment range of 97 to 121 months.

At the sentencing hearing on January 30, 2012, the District Court discussed the fact that Movant was not eligible for a safety-valve reduction. "In 1994,

4

Congress enacted 18 U.S.C. § 3553(f), which allows certain low-level defendants convicted of drug crimes to avoid application of the harsh mandatory minimum prison terms otherwise directed by statute." *United States v. Jasso*, 634 F.3d 305, 307 (5th Cir. 2011). The Sentencing Guidelines in U.S.S.G. § 5C1.2(a)(1) reflect that this "safety-valve" reduction applies when an inmate does not have more than one criminal history point. Thus, the "safety valve only applies to defendants with one or zero criminal history points as calculated before application of any downward variances permitted elsewhere by the Guidelines." *Jasso*, 634 F.3d at 308. Because Movant had more than one criminal history point, the District Court found that he did not qualify for a safety-valve reduction:

| | |
|---|---|
| The District Court: | Okay. You have no safety valve qualification here either. |
| The Government: | There is points, your Honor. Otherwise – |
| Trial Counsel:[2] | That's really the whole crux of the argument, Judge. |
| The District Court: | I mean, points are points unless you can find some reason why all these convictions either are erroneous -- he's --really, he's got – |
| Trial Counsel: | He has three points. |

---

[2] Eric S. Jarvis represented Movant at sentencing. Derek M. Harkrider represented Movant on appeal.

5

| | |
|---|---|
| The District Court: | You've got two of them taken off, two different convictions to get him where he would safety valve qualify. |
| Trial Counsel: | We're good on one of them, that's a JP case. There's no hot check and there's nothing on that, but we're still stuck with one, and it will be just -- I just don't want to see him stuck at a place where he can't get underneath. |

(Cr. Docket Entry No. 117 at 3-4). The defense provided a written acceptance of responsibility resulting in the Government's motion for a decrease. (Cr. Docket Entry No 117 at 5-6). With the statutory minimum term of imprisonment, the guideline range was between 120 and 121 months. This Court adopted the factual findings contained within the PSR. This Court considered the factors under 18 U.S.C. 3553(a) and concluded that "a sentence within these Guidelines satisfies them and, therefore, pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that Defendant, Mr. Espericueta, is committed to the custody of the Bureau of Prisons to be imprisoned for a term of 120 months." (Cr. Docket Entry No. 117 at 7). The Court ordered five-years supervision after release. (Cr. Docket Entry No. 117 at 7).

Movant filed an unsuccessful appeal to the Court of Appeals to the Fifth Circuit. *United States v. Espericueta*, 491 F. App'x 49 (5th Cir. 2012).

6

### III. SUMMARY OF PLAINTIFF'S PLEADING

Plaintiff proceeds pro se. Pro se pleadings are held to less stringent standards than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Pleadings filed by a pro se litigant are entitled to a liberal construction. *United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997) (citing *Nerren v. Livingston Police Dep't*, 84 F.3d 469, 473 n.16 (5th Cir. 1996)).

Pursuant to 42 U.S.C. § 1983, Plaintiff asks for an order from this Court finding the named Defendants liable for "Elongated Imprisonment" and "Defamation of Character." (Dkt. Entry No. 1 at 1; 13.) The named Defendants are Aida Palacios, who was a former investigator with the Hidalgo County District Attorney's Office, Charlie Vela, who was a former investigator with the Hidalgo County District Attorney's Office, and Sergeant Rolando Garcia, who is or was an officer with the San Juan Police Department.

Plaintiff alleges that Sergeant Garcia instigated the traffic stop of the tractor trailer Plaintiff was driving, which ultimately resulted in his conviction in this Court for conspiracy to possess with intent to distribute 5 kilograms or more of cocaine. (Dkt. Entry No. 1 at 2.) Plaintiff alleges that, after he was pulled over by Sergeant Garcia, Defendants Aida Palacios and Charlie Vela showed up "immediately" at the scene of the traffic stop. (*Id.*) Plaintiff alleges that Sergeant Garcia told Plaintiff they were going to search the trailer. (*Id.*) Plaintiff alleges that he then asked Sergeant

Garcia on whose authority Aida Palacios and Charlie Vela were acting. (*Id.*) At that point, Plaintiff alleges, Sergeant Garcia returned to his squad car and drove away, leaving Plaintiff "in the company of the two Hot Check ex-investigators." (*Id.*) Plaintiff alleges that, shortly thereafter, DEA Agent "Tony" (last name unknown) and other unidentified individuals appeared on the scene. (*Id.*) According to Plaintiff, DEA Agent Tony began to question Palacios and Vela at length as to why they had stopped Plaintiff and what their intention was in searching the tractor trailer. (*Id.*) Plaintiff states that he was subsequently taken into custody and driven to a county jail north of Edinburg, Texas. (*Id.*)

According to Plaintiff, he met with bail bondsman Julio A. Davila and attorney Eric S. Jarvis the next day. (*Id.*) Mr. Jarvis explained to him that his bond had been posted and that he, Mr. Jarvis, was hired to represent Plaintiff. (*Id.*) Plaintiff states that he did not post the bond or hire Mr. Jarvis. Plaintiff states that he asked for the identity of who did all this, but he did not get a response, other than a "knowing smirk." (*Id.* at 2–3.) Plaintiff states that, to this day, he does not know who paid the bondsman or hired the attorney. (*Id.* at 3.)

According to Plaintiff, sometime later, he learned from a deluge of newspaper articles that Davila was in a romantic relationship with Palacios and also learned that they, along with multiple other Hidalgo County officials, were participants in federal conspiracies, such as the "Panama Unit" case. (*Id.*) Plaintiff states that he learned later that Mr. Jarvis represented multiple Hidalgo authorities involved in these criminal conspiracies. (*Id.*)

According to Plaintiff, the Defendants Palacios and Vela's actions directly harmed him because he received an "elongated federal sentence" by the inherent nature of their position in the Hidalgo County D.A.'s Hot Check Division because his criminal history (presumably, as recited in

8

the PSR in Plaintiff's criminal case before this Court) reflects a 1999 "theft of property" conviction related to the "hot check." He states that Hidalgo County does not have the paperwork to substantiate the theft of property conviction, and this conviction made him ineligible for the safety valve when he was sentenced by this Court. (*Id.* at 3–4.)

Plaintiff alleges that Defendants' actions directly harmed him and led to defamation of his character by "permanently branding him as a convicted criminal from a traffic stop that was arranged by the defendants for their personal gain, and wherein they acted in furtherance of a proven criminal conspiracy involving the authorities of Hidalgo County." (*Id.* at 4.)

In a nutshell, Plaintiff alleges that the three Defendants had prior knowledge of the cocaine Plaintiff had in the tractor trailer he was driving, and their intention was to illegally confiscate the cocaine for their own financial gain. (*See id.* 4–11.) He alleges that Defendants Palacios and Vela, by virtue of their positions in the Hot Check Division of the Hidalgo County District Attorney's Office, are responsible for his "theft of property" conviction from 1999, which rendered him ineligible for the safety valve before this Court. (*See id.*) The Defendants' actions also branded him a convicted felon in relation to his federal conviction, which is defamatory. In support of his claims and allegations, Plaintiff has attached to his pleading numerous newspaper articles about the high-profile Panama Unit federal cases involving local authorities and a corruption case that references Davila (the bondsman who Plaintiff says showed up at the jail with Mr. Jarvis), a copy of part of Plaintiff's PSR, a letter he wrote to a Hidalgo County court about the theft of property records, and a letter he wrote to the Assistant United States Attorney who prosecuted Plaintiff's case before this Court. (Dkt. Entry No. 1-1.)

## IV. FINDINGS AND CONCLUSIONS

Plaintiff is not proceeding in forma pauperis in this case, and he paid the civil filing fee in full. However, his complaint is subject to preliminary screening under 28 U.S.C. § 1915A. *See, e.g., Martin v. Scott*, 156 F.3d 578 (5th Cir.1998) (explaining that the statutory screening provision under § 1915A applies to all prisoners' actions against governmental entities, their officers and employees, regardless of whether the prisoner is proceeding in forma pauperis). A claim that is legally frivolous is subject to dismissal under 28 U.S.C. § 1915A(b)(1). A § 1983 or civil rights claim which falls under the *Heck* rule is legally frivolous, unless the conviction or sentence at issue has been reversed, expunged, invalidated, or otherwise called into question. *Boyd v. Biggers*, 31 F.3d 279, 283 (5th Cir. 1994).

Having reviewed the relevant law and the record, the undersigned recommends that Plaintiff's civil rights claims for (1) "elongated Federal sentence" and (2) "defamation of his character by permanently branding him as a convicted criminal from a traffic stop that was arranged by the defendants for their personal gain, and wherein they acted in furtherance of a proven criminal conspiracy involving the authorities of Hidalgo County" be dismissed because they are both barred by *Heck v. Humphrey*.

According to the rule in *Heck v. Humphrey*, 512 U.S. at 486–87, to recover damages based on allegations of "unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a civil rights plaintiff ordinarily must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of collateral relief, such a habeas relief. Thus,

when a "prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. Because a "§ 1983 claim falls under the rule in *Heck* only when a judgment in favor of the plaintiff would necessarily imply the invalidity of a subsequent conviction or sentence," a court must first determine whether judgment in favor of any of a plaintiff's claims would necessarily imply the invalidity of his sentence." *Id.* A claim for damages that bears a relationship to a conviction or sentence that has not been so invalidated is not cognizable under 42 U.S.C. § 1983. *Id.*

The rule in *Heck* applies to claims for injunctive and declaratory relief. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998). The rule in *Heck* applies to civil rights claims that implicate state and federal convictions and involve state and federal prisoners. *See Stephenson v. Reno*, 28 F.3d 26, 27–28 (5th Cir. 1994) (involving a *Bivens*-type claim that related to a federal conviction and sentence); *Spina v. Aaron*, 821 F.2d 1126, 1127–29 (5th Cir. 1987) (explaining that there should be "no distinction between state and federal prisoners and that the analysis of a federal prisoner's *Bivens*–type action which implicated his conviction 'should parallel the analysis used to evaluate state prisoners' § 1983 claims").

The propriety of Plaintiff's traffic stop, search, and seizure and the validity of his "hot check" conviction in 1999 form the basis of his cause of action for the "elongated sentence" imposed by this Court. The undersigned finds that this claim necessarily implies the invalidity of his federal conviction and sentence. *See, e.g., Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995) (explaining that an unlawful arrest claim does not always implicate the validity of a criminal prosecution

11

following the arrest, but also explaining that if the § 1983 claimant "is convicted and evidence is presented by the prosecution at his criminal trial which is a direct or indirect product of one or more of his arrests, then his section 1983 damage claims challenging the validity of his arrests would appear to undermine the validity of his conviction and hence be barred by *Heck*"); *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) ("[The plaintiff's] proof to establish his false arrest claim, *i.e.*, that there was no probable to arrest [for the crime for which he was ultimately convicted], would demonstrate the invalidity of [the conviction]."); *Connors v. Graves*, 538 F.3d 373, 377–78 (5th Cir. 2008) (involving unlawful seizure); *see also Cormier v. Lafayette City-Par. Consol. Govt.*, 493 F. App'x 578, 583 (5th Cir. 2012) (unpublished) ("The specific crimes charged are irrelevant if the § 1983 claims would cause a civil judgment in the plaintiff's favor to 'collide' with the criminal judgment.") (citation omitted); *Thomas v. Pohlmann*, 681 F. App'x 401, 406 (5th Cir. 2017) (unpublished) ("Given that Plaintiffs ultimately pleaded guilty to all the charges for which they were arrested, allowing them to proceed on their false arrest claim would necessarily implicate the validity of their convictions because the same conduct that formed the probable cause for their arrest also provided the basis for their convictions."). Further, any suggestion that conspiratorial actions by some or all of the Defendants at the time of the stop, search, or arrest and in relation to the "hot check" conviction from 1999 that appeared in Plaintiff's PSR also necessarily implicate the validity of his criminal conviction and sentence arising in this Court.

As for Plaintiff's defamation claim, it is also barred by *Heck*. Plaintiff asserts a claim based on the "defamation of his character by permanently branding him as a convicted criminal from a traffic stop that was arranged by the defendants for their personal gain, and wherein they acted in furtherance of a proven criminal conspiracy involving the authorities of Hidalgo County."

Defamation is not, standing alone, a constitutional tort. *Paul v. Davis*, 424 U.S. 693, 711–12 (1976); *Kerr v. Lyford*, 171 F.3d 330, 339 (5th Cir. 1999) (noting that defamation "is not a constitutional tort"), *abrogated on other grounds by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003). As a result, a section 1983 defamation claimant must show "a stigma plus an infringement of some other interest" and that "[t]o fulfill the stigma aspect of the equation, a claimant must show falsity of the stigmatizing communication." *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 (5th Cir.1991). Plaintiff's defamation claim is barred by *Heck* because he cannot satisfy the "stigma-plus-infringement" requirement without implying the invalidity of his federal conviction and sentence, or, stated another way, *Heck* precludes using any of the predicate infringement claims relating to the stop, search, or seizure or the 1999 theft of property conviction set forth in his PSR. *See Cormier*, 493 F. App'x at 584 ("Cormier cannot satisfy this 'stigma-plus-infringement' requirement, however, because applying *Heck* precludes using false arrest and malicious prosecution as predicate infringement claims."); *Shaw v. Harris*, 116 F. App'x 499, 500 (5th Cir. 2004) (unpublished) ("A decision granting Shaw injunctive or declaratory relief on her allegations of evidence tampering and concealment, perjury, ineffectiveness of counsel, prosecutorial misconduct, or the filing of false affidavits in her state habeas corpus proceeding, including any defamation claims based on those affidavits, would necessarily imply that her conviction was invalid. Thus, all of those claims are barred by *Heck*."); *Price v. County Ct. Clerk of Hill County Texas*, 73 F. App'x 80 (5th Cir. 2003) (unpublished) (explaining that the only mention of injury found in the plaintiff's brief or his complaint is the use of allegedly false information in his federal sentencing, which implicitly challenges the duration of his confinement because, if the fact of his prior conviction was false, that fact would render the federal sentence invalid). If Plaintiff were to prevail on his

13

defamation claim in this lawsuit, such a result would imply the invalidity of Plaintiff's conviction and sentence in this Court because he is alleging, in so many words, that his federal conviction is defamatory because it brands him as a convicted felon.

The record in this Court, which includes his case pursuant to § 2255, and the appellate record show that Plaintiff's conviction and sentence have not been reversed on direct appeal, expunged by executive order, declared invalid, or called into question by a federal court's issuance of collateral relief. Because Plaintiff's allegations, if true, would necessarily imply the invalidity of his conviction and sentence in this Court, his "elongated sentence" claim and "defamation" claim are not cognizable at this time because they are barred by *Heck*. *See Heck*, 512 U.S. at 486–87. Therefore, the undersigned concludes that his claims for damages or other relief must be dismissed with prejudice until the *Heck* conditions are met. *See Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996) (explaining that claims barred by *Heck* are "dismissed with prejudice to their being asserted again until the *Heck* conditions are met").

## V. CONCLUSION

### *Recommended Disposition*

After careful review of the record and applicable law, the undersigned respectfully recommends that Plaintiff's civil rights claims for "elongated federal sentence" and "defamation" be summarily **DISMISSED WITH PREJUDICE** to their being asserted again until the *Heck* conditions are met.

### *Notice to the Parties*

Within 14 days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations. A party may respond to another party's

objections within 14 days after being served with a copy thereof. The district judge to whom this case is assigned shall make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

The clerk of this Court shall forward a copy of this document to Plaintiff via certified mail (return receipt).

**DONE** at McALLEN, Texas, this 5th day of December, 2017.

                                                Dorina Ramos
                                   UNITED STATES MAGISTRATE JUDGE